GERTRUDE P. DANIELS, DONALD P. DANIELS
AND GEORGE H. DANIELS v. BISHOP TRUST
COMPANY, LIMITED, EXECUTOR UNDER THE
WILL AND OF THE ESTATE OF JULIUS CLARKE
DANIELS, DECEASED; HARRIET DANIELS
STRYKER AND HELEN KINGSBURY.

No. 2019.

ARGUED OCTOBER 15, 1931.          DECIDED NOVEMBER 3, 1931.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PERRY, C. J.

Julius Clarke Daniels died in Los Angeles, California, in June, 1929, being at that time a resident of Honolulu.

In January of that year he executed a will in which, after directing that all of his just debts and funeral and testamentary expenses be paid, he bequeathed $5000 to his sister Harriet Daniels Stryker, "if she survive me," a gold ring to his oldest son Donald, a watch and chain and cuff links to his youngest son George, all of his "jewelry, automobiles, typewriters, clothing and personal effects" to his "friend Helen Kingsbury," and all of the residue of his property "unto such of the following named persons as shall survive me in equal shares absolutely and in fee simple, viz: my son Donald P. Daniels, my son George H. Daniels," and "my friend Helen Kingsbury." The two sons, the widow Gertrude P. Daniels and Helen Kingsbury all survived the testator. Upon the will being offered for probate the two sons opposed the petition, entering a contest upon the grounds that the testator was not competent to make a will and that he had been unduly influenced by Helen Kingsbury. After trial of the issues so raised the circuit judge admitted the will to probate, holding, as it must be assumed, that he found the testator to have been mentally competent at the time of the execution of the will and that there had been no undue influence. From the decree admitting the will to probate no appeal in any form was taken by the contestants and that decree is therefore in full force and effect.

Subsequently the two sons and their mother filed a bill in equity to declare a trust, claiming in brief that the property held by the testator at the time of his death was held by him purely as trustee and that the beneficial interest was wholly in the two sons. Thereupon, *in limine* and before answer, the respondents filed a lengthy motion, supported by affidavit, to dismiss the petition. The grounds of this motion are summarized by the respondents in their brief as follows: "(1) That the bill was purely an attempt by collateral attack to undo the

proceedings of the probate court involving the same subject matter; (2) that the petitioners were barred by having elected their remedy in probate, by estoppel and by *res adjudicata;* (3) that the bill was without equity and failed to set up a trust; (4) that petitioners' claim, if any existed, should have been filed with the executor within the four months' period required by statute." The circuit judge filed a written opinion sustaining the motion. The petitioners then asked leave to file an amended petition. The motion was denied and the bill was dismissed.

The amended petition contained in effect the following allegations: that the respondent, the Bishop Trust Company, Limited, acting by virtue of its appointment as executor of the will of Julius Clarke Daniels, is in possession of certain property consisting of shares of stock in corporations, jewelry, bonds and cash, of an approximate value of $80,000; that this property is claimed by the trust company as assets of the estate of the testator; that Gertrude P. Daniels, wife of the testator, "within the period from 1900 to 1922, did give to" testator "stock, bonds and money * * * in trust, nevertheless, and to the following uses, to-wit: for himself * * * during his lifetime as tenant for life and upon his death to petitioners Donald P. Daniels and George H. Daniels in remainder;" that the stocks and bonds given by the wife to the testator between 1900 and 1922 were so given "in consonance with an arrangement and agreement whereby said" testator "was to enjoy the income and such of the corpus thereof as might be necessary for his adequate support during the term of his natural life and that said income and corpus, after his death, was to go in remainder" to Donald and George; that in 1922 the wife transferred to the testator the sum of $30,000, "it being then and there agreed that" the

testator "should hold this sum in the same manner and subject to the same conditions that he held the stocks and bonds herein referred to;" that "the understanding and agreement under which all of this property passed" to the testator "was by the intendment of the parties to be held by him * * * as trustee for himself and the petitioners" Donald and George "for said" testator "as tenant for life and for said" Donald and George "as tenants in remainder;" that the testator "did so employ and use said stocks and bonds and moneys until the date of his death;" that the testator "at no time during said period either made or received any other moneys from any other source, save and except a small income from certain stocks bequeathed to him by his father, nor did he during said period engage in any work or labor of any kind from which moneys were made or received by him except as aforesaid;" that the estate of which said testator "died possessed represents the proceeds and earnings from the above-mentioned stocks and bonds and moneys entrusted to him by petitioner Gertrude P. Daniels for the uses herein indicated and that this property was trust property to which petitioners" Donald and George "were and are entitled as tenants in remainder; and that in and by the terms of the agreements and understanding hereinbefore described the petitioners" Donald and George "have become and are entitled to have the property of and belonging to said" testator "as of the date of his death impressed with a trust in their favor."

In a third count the trust agreement is restated substantially as follows: that the wife "at the time of the transfer and delivery by her of the aforesaid properties to said" testator "did so conditional upon the subsequent exercise by the said" testator "of a certain power in trust to designate and name by his testamentary act" Donald and George "as legatees of all of this trust prop-

erty, and that said" testator "did undertake, in further protection of the conditions upon which he took and held said properties, to hold and exercise said power in trust and by his testamentary act to name and designate said" Donald and George "to have and receive said properties remaining in his hands and possession on the death of him, the said" testator "to the end that the intention of said parties with reference to the ultimate disposition of said properties should be the more effectively and completely accomplished, whether through the continuance of the trust created as aforesaid or the then transfer of said properties to said persons hereinbefore designated as beneficiaries of said trust, in performance of this imperative power of appointment."

The prayer of the petition is for a declaration that the property given by the wife to the testator is subject to a trust in favor of Donald and George and for a decree enforcing the trust.

One of the contentions of the respondents is that it does not sufficiently appear from either the original or the amended petition that the property transferred by Mrs. Daniels to her husband was so transferred subject to a trust in favor of the two sons and that all that does appear from the allegations of the petitions is that there was a contract on the part of the husband to leave the property by will to his two sons and that therefore an action at law for damages for breach of the contract will afford the sons a sufficient remedy. This contention cannot be sustained. It is unnecessary to consider the allegations of the original bill in this respect. Those of the amended bill clearly show that the property given by the wife to the husband was so transferred upon the trust that it would be held by the husband for his own support and use during his lifetime and, as to the unused remainder both of income and of principal, for the use

of the two sons after the father's death. Whether the allegations are true is a question which is not yet presented, no answer having been filed; but that the petition sufficiently alleges a trust we do not doubt. The circuit judge evidently was of the same opinion, for his final decision denying leave to amend and granting a dismissal of the bill was not based upon the ground that a trust was not alleged but was based entirely upon other considerations.

The case disclosed by the amended bill is not that of an undertaking or contract by the decedent to leave property by will to a certain beneficiary. Such contracts when made refer to the property of the person who enters into the undertaking to devise or bequeath. Assuming the allegations of this amended bill to be true, the testator did not make any promise to leave in any specified manner any property belonging to him. What he argeed to do was to hold the property of another upon trusts prescribed by that other.

Nor are the principles of *res judicata* applicable in this instance. The probate court decided that the testator had mental capacity to make a will and that he was not unduly influenced by Helen Kingsbury. It did not decide whether any or all of the property claimed by the testator to be his belonged to him in reality or was held subject to a trust in favor of others. It could not have so decided. It had not the jurisdiction to do so. The subject matter of the inquiry before it was not the same as the subject matter of the inquiry before the court of equity under the amended bill. In spite of the adjudicated facts that the testator had mental capacity and was not unduly influenced, it may yet be true that none of the property which he claimed to be his in fact or in law belonged to him. Thus far there has been no adjudication, direct or indirect, by any judicial tribunal whether the property

referred to in the present bill of complaint was subject to the trust claimed in the bill and therefore the judgment of the probate court is not a bar to the present suit in equity.

Under the circumstances just recited the doctrine of election of remedies is not applicable. The mere fact that the two sons chose to oppose the admission of the will to probate and to obtain from the court of probate an adjudication of those matters which it was competent to adjudge does not deprive them of their right to proceed by suit in equity to obtain an adjudication of other matters which the court of equity alone is competent to adjudge.

The only remaining contention of the respondents is that by their acceptance from the executor of the sum of $2000 each, by way of partial distribution, the two sons are estopped from now claiming in the suit in equity that the property described in their bill was held by the testator subject to a trust in their favor and was not his to devise. Let it be assumed for the moment that all of the property held by the testator at the time of his death and now claimed by the executor was subject to the trust declared on in the bill and that, in other words, the testator left no property of his own which could lawfully pass by his will. Upon this assumption we are of the opinion that the doctrine of estoppel does not apply. If the property which the executor is attempting to administer and dispose of all belongs in equity to the two sons, the sum of $4000 which they received from the executor was purely a part of their own property and neither Helen Kingsbury nor any other legatee under the will would be entitled to receive it. Neither Helen Kingsbury nor anyone else, under this hypothesis, would be wronged by the payment of the $4000 to the true owners, the two sons. The doctrine of estoppel was devised in

order to effectuate justice. It was not devised and should never be applied to effectuate injustice. If, under the hypothesis immediately under consideration, the doctrine should be applied in order to aid Helen Kingsbury to receive some part of that sum of $4000, the result would be, assuming as we must that the allegations of the bill are true, that Helen Kingsbury would be thereby enabled to receive from the testator property which was not his to devise.

Estoppel is an affirmative defense. The burden of alleging and proving the facts constituting the estoppel is upon the party relying upon that defense. 21 C. J. 1250. Whether, if the $2000 received by each of the sons came in whole or in part from property not subject to the trust and which was the testator's to devise, the acceptance of the $4000 by way of partial distribution from the executor would estop the complainants from instituting or maintaining the present suit in equity is a question which does not arise upon the present state of the record and upon which no opinion is expressed. The movants have not in their motion to dismiss alleged that the testator left any property other than that which the complainants claim to be subject to the trust. On the contrary, their whole effort in the motion would seem to have been to show that by the present suit a trust is sought to be impressed upon all of the property held by the testator and claimed by the executor. The allegations of the bill on this point are contradictory and ambiguous. It does not appear clearly, if at all, from those allegations that the testator left any property of his own not subject to the trust in favor of the complainants. An estoppel cannot be based upon these contradictory and ambiguous allegations. The burden was not upon the two sons to negative by their bill the possibility of an estoppel, but it was upon the respondents to show affirmatively by

their motion or otherwise the existence of the estoppel.

The decree appealed from is reversed, the motion to dismiss is denied and the cause is remanded to the circuit judge for such further proceedings as may appropriately be had, not inconsistent with this opinion.

*A. W. A. Cowan* (*Ulrich & Hite* on the briefs) for plaintiffs in error.

*H. T. Kay* (*H. R. Hewitt* and *Thompson, Beebe & Winn* on the brief) for defendants in error Helen Kingsbury and Bishop Trust Co.

